## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

TANYA THELISIA WHORTON,    )
    )
    Plaintiff,    )
    )
v.    )    Case No.:  4:18-cv-01016-LCB
    )
NANCY A. BERRYHILL, ACTING    )
COMMISSIONER OF SOCIAL    )
SECURITY    )
    )
    Defendant.    )

## MEMORANDUM OPINION AND ORDER

On July 2, 2018, the Plaintiff Tanya Whorton filed a complaint (Doc. 1) seeking judicial review of an adverse final decision of the Commissioner of the Social Security Administration ("the Commissioner") pursuant to 42 U.S.C. § 405(g). The Commissioner filed an answer to the complaint on October 22, 2018. (Doc. 6). The Plaintiff filed a brief in support of her position on December 1, 2018, (Doc. 10) and the Commissioner filed a brief in support of the decision on December 20, 2018 (Doc. 11). The Plaintiff then filed a reply brief to the Commissioner on December 26, 2018 (Doc. 12). Therefore, this issue is ripe for review. For the following reasons stated below, the final decision of the Commissioner is affirmed.

## I.    BACKGROUND

The Plaintiff protectively filed for a period of disability and disability insurance benefits on June 30, 2015 (R. 15). She alleged that her disability began on April 15, 2015. *Id*. Her claim for benefits was denied on August 12, 2015, and the Plaintiff subsequently filed a request for a hearing before an Administrative Law Judge (ALJ) on August 28, 2015. *Id*. The Plaintiff appeared before ALJ Perry Martin through a video hearing on August 16, 2017. *Id.* The Plaintiff testified at the hearing and was questioned by her attorney and the ALJ. (R. 36, 42). Additionally, vocational expert Dr. William A. Crunk testified at the hearing. (R. 48). The ALJ issued his opinion on September 21, 2017 (R. 26). When he issued his opinion, the ALJ used the five-step evaluation process promulgated by the Social Security Administration to determine whether an individual is disabled. (R. 16). The ALJ made the following determinations:

1. The Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2019. (R. 17).

2. The Plaintiff has not engaged in substantial gainful activity since April 15, 2015, the alleged onset date of the disability. *Id.*

3. The Plaintiff has the following severe impairments: lumbar spondylosis, HIV, hepatitis, and anxiety. *Id.*

4. The Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (R. 18).

5. The Plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. 404.1567 (b) except occasional pushing and pulling with lower extremities. The Plaintiff cannot climb ladders, ropes,

or scaffolds; can occasionally climb ramps and stairs; can occasionally kneel, crouch, stoop and crawl; can frequently balance; should avoid concentrated exposure to extreme heat or cold and vibration; and cannot have any exposure to dangerous machinery and unprotected heights. The Plaintiff can understand and remember short and simple instructions but is unable to remember detailed or complex instructions; can do simple, routine, repetitive tasks, but cannot do detailed or complex tasks; should have no more than occasional contact with the general public; and can deal with changes in the workplace if they are introduced occasionally and gradually, and are well explained. (R. 19-20).

6. The Plaintiff is unable to perform any past relevant work. (R. 25).

7. The Plaintiff was born on February 18, 1963, and was 52 years old, which is defined as an individual closely approaching advanced age, on the alleged onset date. (R. 25).

8. The Plaintiff has at least a high school education and can communicate in English. *Id.*

9. A determination of transferability of job skills is not material to the determination of disability as the Medical-Vocational Rules support a finding that the Plaintiff is not disabled. *Id.*

10. With the Plaintiff's age, education, work experience, and RFC, there are a significant number of jobs in the national economy she can perform. *Id.*

11. The Plaintiff has not been under a disability as defined in the Social Security Act, from April 15, 2015 through the date of the ALJ's decision on September 21, 2017. (R. 26).

After the ALJ denied her claim, the Plaintiff requested an appeal to the Appeals Council and was denied on May 10, 2018 (R. 1). At that point, the ALJ's decision became the final decision of the Commissioner. *Henry v. Comm'r of Soc.*

*Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015). The Plaintiff filed this action on July 2, 2018. (Doc. 1).

## II.    DISCUSSION

The Social Security Administration (SSA) is authorized to pay Supplemental Security Insurance (SSI) and disability insurance to claimants that have a disability. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1358 (11th Cir. 2018) (citing *Barnhart v. Thomas*, 540 U.S. 20, 21 (2003)). Title II of the Social Security Act defines disability as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* at 1358-59. (citing 42 U.S.C. §§ 423 (d)(1)(A)).

### A. Standard of Review

The Court reviews "de novo the legal principles upon which the ALJ relied, but [is] limited to assessing whether the ALJ's resulting decision is supported by substantial evidence." *Henry*, 802 F.3d at 1266-67. "Substantial evidence is more than a scintilla and is such relevant evidence that a reasonable person would support its conclusion." *Winshel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citing *Crawford v. Comm'r of Soc. Sec.*, 631 F.3d 1155, 1158 (11th Cir. 2004)). The Court does not "decide facts anew, mak[e] credibility

determinations, or reweigh the evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The Court instead "must scrutinize the record as a whole in determining whether the ALJ reached a reasonable decision." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## B. Five Step Sequential Evaluation

In order to determine if a claimant has a disability, the SSA regulations mandate that an ALJ must follow a five step sequential evaluation while evaluating a disability claim. *See* 20 C.F.R. §§ 404.1520; 416.920. Pursuant to the regulations, the ALJ must proceed with his analysis as follows:

1. Is the claimant engaged in substantial gainful activity? If "yes" the claimant is not disabled and the analysis ends here. If the answer is "no," proceed to the next step of the analysis. 20 C.F.R. § 404.1520.

2. Does the claimant have a medically determinable physical or mental impairment or combination of impairments that meets the duration requirements of 20 C.F.R. § 404.1509? If "no," the claimant is not disabled. If "yes," proceed to the next step of the analysis. *Id.*

3. Does the claimant have an impairment that equals a listed impairment in 20 C.F.R. § 404, Subpart P Appendix 1 and meets the durational requirements of 20 C.F.R. § 404.1509? If "yes" the claimant is disabled. If "no," proceed to the next step of the analysis. *Id.*

4. Does the claimant have the residual functional capacity (RFC) to return to past relevant work? If "yes" the claimant is not disabled. If no, proceed to the final step of the analysis. *Id.*

5. Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If "no," the claimant is disabled. If "yes," the claimant is not disabled. *Id.*

Initially, the claimant bears the burden of proof regarding the first four steps of the above analysis. *Washington,* 906 F.3d at 1359. The claimant carries a particularly heavy burden when showing why he or she cannot engage in past relevant work. *Id.* After the fourth step, the burden then shifts to the Commissioner to determine if there are jobs in the national economy that the claimant can perform. *Id.* However, while the burden shifts to the Commissioner at step five, the burden ultimately falls to the claimant to show a disability exists. *Id.* (citing *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

### C. The Plaintiff's Contentions

The Plaintiff alleges that the ALJ erred in a number of ways when determining that she was not disabled. She contends that the ALJ (1) erred by repudiating the opinion of an examining psychologist and gave greater weight to the opinion of a non-examining physician; (2) failed to consider all the Plaintiff's severe impairments; (3) failed to state adequate reasons for finding the Plaintiff was not credible; (4) failed to properly apply Grid Rule 201.14; (5) failed to base the decision on substantial evidence; (6) found the determination of the Plaintiff's RFC was conclusory; (7) and failed to adequately consider the Plaintiff's testimony concerning the side effects of her medication. (Doc. 11). For clarity, the Court has combined issues in its analysis that are related to each other. The Court will now address each of these contentions in turn.

1. **The ALJ did not err by repudiating the opinion of an examining psychologist and giving greater weight to the opinion of a non-examining physician.**

The Plaintiff argues that the ALJ erred by giving little weight to psychologist Dr. David Wilson's medical opinion. (Doc. 10, p. 14). Dr. Wilson examined the Plaintiff once on August 7, 2017. (R. 468). He determined that the Plaintiff suffered from a number of psychological conditions including depression and memory deficits. (R. 465). The ALJ noted that he gave little weight to Dr. Wilson's opinion because his findings were inconsistent with the medical record. (R. 24). Instead, greater weight was given to Dr. Robert Estock's opinion, a non-examining physician who found the Plaintiff did not have a severe mental disorder. *Id*. The Plaintiff first alleges the ALJ erred by not stating with "some measure of clarity" the reason why Dr. Wilson's opinion was discounted. (Doc. 10, p. 14). She also alleges that the opinions of non-examining physicians are entitled to little weight when in dispute with the findings of an examining physician pursuant to *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988) (holding that "the opinions of non-examining, reviewing physicians, …when contrary to those of examining physicians are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence.). *Id*. at p. 17.

a. **The ALJ's reasons were given with particularity.**

When an ALJ affords different weight to disparate medical opinions, he must give his reasons "with particularity." *Winschel v. Comm'r. of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). If an ALJ does not "state with some measure of clarity the grounds for his decision, [the Court] will decline to affirm 'simply because some rationale might have supported the ALJ's conclusion.'" *Id*. (citing *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam). Without a statement from the ALJ that notes why he gave different weight to disparate sources, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

In this case, the Plaintiff claims that the ALJ did not correctly articulate why he decided to give less weight to Dr. Wilson's medical opinion. (Doc. 10, p. 14). However, the ALJ's decision details why Dr. Wilson's opinion was afforded less weight. (R. 24). He states that little weight is given to the doctor's opinion because it is inconsistent with the medical record. *Id.* To support his reasoning, he cites the Plaintiff's ability prepare meals, care for her grandchild, and her "mostly normal" mental health condition. (R. 25). The ALJ's findings are supported by substantial evidence in the record. For example, the Plaintiff's Adult Function Report (AFR) indicates that she does not need reminders to take her medication, maintain personal grooming, and could prepare dinner twice a week. (R. 237). She also

wrote she did not have issues with things like completing tasks, following instructions, and getting along with others. (R. 240). Her daughter reported in her Third Party AFR the Plaintiff was unable to care for her grandchild because of the effects of her disability. (R. 228). However, the Plaintiff stated in a report taken at UAB Medicine on January 25, 2016, that she has her grandchild during the day. (R. 429). While the Plaintiff did seek psychiatric inpatient treatment at Gadsden Regional Medical Center in June 2014, she responded well to treatment for her depressive symptoms. (R. 314). There was also no indication of psychological abnormalities in her assessments from providers she saw a number of times like UAB Medicine. *See* (R. 413-61). Accordingly, the reasons the ALJ gave for discrediting Dr. Wilson's examination were particular and supported by substantial evidence.

### b. The non-examining medical opinion contradicts the examining medical opinion.

Next, the Plaintiff argues that Dr. Estock's opinion received inappropriate weight because he did not examine the Plaintiff and was contrary to the opinion of Dr. Wilson, the examining psychologist. (Doc. 10, p. 17). The Plaintiff supports this position with the holding from *Lamb v. Bowen*. 847 F.2d at 703. However, the Court finds that the Plaintiff's reliance on *Lamb* is misplaced. When determining what weight to give different medical opinions, "the ALJ should consider the following factors: the examining and treatment relationship between the claimant

and doctor; the supportability and consistency of the opinion with the record as a whole; the specialization of the doctor; and other factors that tend to support or contradict the opinion." *Hand v. Soc. Sec. Admin.*, 2019 WL 4447206, at *3 (11th Cir. 2019); *see also* 20 C.F.R. § 404.1527(c). "The ALJ applies the same standards whether the medical opinion is from a treating physician, a consultative examiner hired by the agency, or a nonexamining, reviewing physician." *Id.* Generally, the regulations provide that the opinions of treating doctors are given the most weight and the opinions of non-examining physicians are given the least amount of weight[1]. *Id.* The regulations also provide a source will be weighed more favorably if it is consistent with the record. 20 C.F.R. § 416.927(c)(1),(4). Additionally, an "ALJ may reject any medical opinion if the evidence supports a contrary finding." *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987).

Here, the ALJ gave the appropriate amount of weight to Dr. Estock's opinion. The physician's opinion that the Plaintiff did not suffer from a severe mental impairment was consistent with the record in the case up to that point. The doctor examined different evidence such as the Plaintiff's AFR, her daughter's third party AFR, and various medical records. *See* (R. 65-67). Dr. Estock also found the Plaintiff's testimony indicated that while she experiences fatigue, she stated she does not have issues with her memory or concentrating. (R. 70). He also

---

[1] Dr. Wilson is not a treating physician. *See* McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (holding that a one-time examiner is not consider a treating physician.)

consulted the Plaintiff's medical records when finding that she did not suffer from a severe psychological impairment. (R. 68-69). As stated above, both the Plaintiff's AFR and medical records provide substantial evidence to justify this conclusion. *See supra* Part (C)(1)(a); *see also* (R. 236, 239, 314, 331).

The Plaintiff also directs the Court to the fact that Dr. Estock only reviewed the records that were available on August 12, 2015. (Doc. 10, p. 17). While a non-examining doctor may not be able to view all of the evidence when making a disability determination, the ALJ has access to the entire record when making a decision. *Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x. 803, 807 (11th Cir. 2013). Notably, the ALJ did not solely rely on Dr. Estock's medical opinion when making his determination of disability. He stated that even though Dr. Estock found that the Plaintiff did not have a severe mental impairment, additional evidence at the hearing showed that she did. (R. 24). Dr. Estock's medical opinion was given greater weight than Dr. Wilson's, but was not controlling as the ALJ referenced the whole record in his decision. *Id*. With the above facts considered, substantial evidence exists to support the ALJ's decision to give greater weight to Dr. Estock's opinion as it is supported by the record.

## 2. The ALJ considered all the claimant's severe impairments.[2]

---

[2] The Plaintiff also argues that the ALJ violates SSR 96-8p in this section of her brief. That argument relates to her RFC and will be discussed in the appropriate portion of this opinion.

The Plaintiff argues that the ALJ failed to follow the "slight abnormality" standard in finding that her genital herpes was not severe. She also argues that the ALJ failed to consider her genital herpes, high grade squamous epithelial lesion[3] (HGSL), depression, PTSD, and arthritis as severe impairments. (Doc. 10, p. 19).

### a. The ALJ followed the slight abnormality standard.

The Plaintiff claims that her genital herpes is a severe impairment and is not a slight abnormality. A claimant's alleged impairment can be classified as "'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1985).

During the hearing, the Plaintiff referenced times in which her herpes outbreaks caused her great discomfort. (R. 38, 44). The ALJ found that the Plaintiff's genital herpes diagnosis was manageable and not severe according to objective evidence in the record. (R. 18). There is substantial evidence to support the ALJ's finding. Throughout the Plaintiff's medical records, there are few references to the pain caused by genital herpes as was described at the hearing. The Plaintiff complained of vaginal pain on a visit to the doctor. (R. 365). However, there are no other indications in the record to her extreme discomfort caused by the

---

[3] Pre-cancerous cells located on the cervix. (Doc. 10, p.19).

disease. In fact, notes from UAB Medicine indicate that she had "few outbreaks" while taking Valtrex and her outbreaks were under "moderate control." (R. 438, 457). Evidence supports that the Plaintiff's genital herpes diagnosis can be considered a "slight abnormality." Accordingly, the Court finds no error here.

**b. The ALJ considered the severity of other impairments.**

Additionally, the Plaintiff claims that the ALJ failed to consider her genital herpes, HGSL, depression, PTSD, and arthritis as severe impairments. (Doc. 10, p. 19-20). A severe impairment is a condition that "significantly limits [one's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Showing a severe impairment requires more than "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality.'" *Wind v. Barnhart*, 133 F. App'x. 684, 690(11th Cir. 2005) (*citing McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)).

Here, substantial evidence supports the ALJ's decision in finding that the above listed impairments were not severe. Regarding the Plaintiff's HGSL, no evidence exists in the record shows that this diagnosis has an impact on her ability to do basic activities. (R. 427). Additionally, there is no evidence in the record that suggests that depression or PTSD is a severe impairment. The Plaintiff received psychiatric treatment at the Gadsden Regional Medical Center where she responded well to medication to treat her depressive symptoms. (R. 314).

However, there is no additional evidence in the Plaintiff's medical records that depression or PTSD rise to the level of severe impairments. For example, her psychiatric evaluations from UAB Medicine indicated "appropriate mood and affect." *See e.g.* (R. 422, 431, 435, 458). There is also no indication from the records that the Plaintiff's arthritis rose to the level of a severe impairment. In one report, the Plaintiff stated that she had pain in her right shoulder "for years." (R. 457). However, her medical records largely show that the Plaintiff did not suffer from continued pain regarding her shoulder. *See e.g.* (R. 405, 414, 422, 444). Finally, for reasons stated in Part *a* above, substantial evidence supports the ALJ's decision to find that the Plaintiff's genital herpes was not severe. *See* Part (II)(C)(2)(a). Therefore, the Court finds no error here.

### 3. The ALJ stated adequate reasons for finding the Plaintiff not credible.

The Plaintiff argues that the ALJ erred when considering the Plaintiff's pain and pain management. She claims that the ALJ erred by finding her pain testimony not credible. (Doc. 10, p. 20). The Plaintiff also claims that the ALJ did not adequately consider the side effects of her pain medication. (Doc. 10, p. 34).

### a. The ALJ correctly rejected the Plaintiff's pain testimony.

The Plaintiff asserts that the ALJ erred by not providing adequate reasons for discounting her pain testimony. (Doc. 10, p. 20). An individual can "establish that her pain is disabling through objective medical evidence that an underlying

medical condition exists that could reasonably be expected to produce the pain."
*Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). If an ALJ fails to articulate reasons for rejecting the claimant's pain testimony or his reasons are not supported by substantial evidence, the claimant's testimony must be accepted as true. *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987). When measuring the intensity and persistence of these symptoms, the ALJ can consider factors such as: "the claimant's daily activities; the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; [and] any measures other than treatment an individual uses or has used to relieve pain or other symptoms." SSR 16-3p, 2016 WL 1119029 at *7. A claimant alleging disability based on pain or other symptoms has to show "evidence of the underlying medical condition and either objective medical evidence confirming the severity of the pain or that the objectively determined medical evidence can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

In this case, the ALJ determined that while the Plaintiff's medically determinable impairments could reasonably be expected to cause her symptoms, her statements about the "intensity, persistence, and limiting effects" of the symptoms were inconsistent with the record. (R. 21). The ALJ's reasons for discounting the Plaintiff's testimony were both articulated and supported by

substantial evidence in the record. The ALJ plainly stated why he found the Plaintiff's testimony not credible. Throughout his discussion, he noted that the record contradicted the severity of her symptoms. (R. 21-24). For example, he found that the medical record indicated the Plaintiff's HIV was under control with medication, she could perform everyday functions despite her diagnosis with hepatitis, her lumbar spondylosis did not cause her significant problems, and her anxiety was not limiting. *Id.*

Substantial evidence from the record supports the ALJ's conclusion. The Plaintiff received treatment for a variety of issues including HIV and hepatitis at UAB Medicine. *See* (R. 438). While a patient there, the medical records indicated that the Plaintiff's bodily systems were largely normal, and she was not experiencing pain regarding these diagnoses. *See e.g.* (R. 438, 443, 449, 452). Additionally, the Plaintiff complained of back pain on visits to the doctor in 2013 and 2017. *See* (R. 380, 402). She stated in a visit to Gadsden Regional Medical Center that she experienced constant "sharp and burning" pain in her lower back. (R. 402). However, even though the Plaintiff alleged she experienced constant pain, her medical records overall indicate that she exhibited no weakness, normal strength, and normal range of motion throughout many of her doctor's visits. *See e.g.* (R. 372, 377, 414, 431, 435, 449). Her AFR stated she does not have issues with physical activities like squatting, bending, or reaching. (R. 240). Additionally,

as stated above, the medical record indicated that the Plaintiff's herpes was under control with medication. (R. 438, 457). Finally, the Plaintiff's AFR indicates that while she experiences fatigue, she has no issue with personal care, completing chores, and does not have issues with physical activities like squatting, bending, or reaching. (R. 236, 237, 240). For these reasons, the Court finds that the ALJ made no error in his assessment.

**b. The ALJ correctly rejected the Plaintiff's testimony about medication side effects.**

Additionally, the Plaintiff argues that the ALJ did not adequately consider the side effects of her medication when determining whether she was disabled. (Doc. 10, p. 34). When determining whether a claimant can work despite her impairments, "the ALJ considers the claimant's subjective symptoms, which includes the effectiveness and side effects of any medications taken for those symptoms." *Walker v. Comm'r of Soc. Sec.*, 404 F. App'x. 362, 366 (11th Cir. 2010). Further, a "claimant must introduce evidence supporting her claim that her symptoms (including any medication side effects) make her unable to work." *Id.*

During the hearing, the Plaintiff testified that the medication that she takes to treat her genital herpes "makes her sleepy and tired." (R. 45). She alleged in her AFR that she does not have the energy to complete certain household tasks. (R. 237). In her third-party assessment, her daughter also wrote that the Plaintiff sometimes becomes tired. (R. 231). The ALJ noted in his decision that the Plaintiff

indicated that her medication made her tired. (R. 20). However, he found that her allegations were not entirely credible because they were not supported by medical evidence or other evidence in the record. *Id*. Aside from the reports from the Plaintiff and her daughter, there is no other evidence in the record that supports her claim about the extent of the side effects she experiences. Accordingly, the ALJ's decision to disregard the Plaintiff's pain testimony is supported by substantial evidence, and there was no error here.

### 4. The ALJ did not err in his determination of the Plaintiff's RFC.

The Plaintiff claims that the ALJ made multiple errors when determining her RFC. She argues that the ALJ violated SSR 96-8p by not considering the impact of the Plaintiff's non-severe impairments on her RFC. (Doc. 10, p. 20). The Plaintiff also argues the RFC was conclusory and in violation of SSR 96-8p. (Doc. 10 p. 30).

### a. The ALJ did not violate SSR 96-8p by not considering the Plaintiff's non-severe impairments.

SSR 96-8p defines RFC as "what an individual can still do despite his or her limitations." SSR 96-8p, 1996 WL 374184 at *2. *See also* SSR 96-4p. A claimant's RFC does not "represent the *least* an individual can do despite his or her limitations or restrictions, but the *most*." SSR 96-8p, 1996 WL 374184 at *2. When determining an individual's RFC, an ALJ can consider evidence like medical history, reports of daily activities, and recorded observations. *Id* at *5. An ALJ also

"must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Id.*

The Plaintiff claims that the ALJ did not consider her HGSL, depression, genital herpes, PTSD, and arthritis when determining her RFC. (Doc. 10, p. 19). The ALJ did note the Plaintiff's HGSL diagnosis in the discussion of her RFC. (R. 22). There was no evidence from the record that this diagnosis had any impact on the Plaintiff's ability to work. Additionally, the ALJ discussed the Plaintiff's allegations of depression and PTSD when recounting Dr. Wilson's assessment that she had the aforementioned mental disorders. (R. 23). As discussed in the analysis regarding Dr. Wilson's testimony, the ALJ correctly gave his testimony less weight because it was not supported by substantial evidence in the record. *See* Part (II)(C)(1)(a). The ALJ noted the Plaintiff's herpes diagnosis in the opinion as well (R. 22), but as the Court analyzed earlier, the ALJ's conclusion that her diagnosis was not causing severe restrictions is supported by substantial evidence. *See* Part (II)(C)(2)(a). Finally, the ALJ discussed the Plaintiff's pain in her shoulder that she alleged was arthritis. (R. 23). He notes that while the Plaintiff complained of shoulder pain, the medical record indicated that she maintained "normal range of motion and strength." (R. 23). This assertion is supported by substantial evidence in the record. (R. 414, 422, 444). Therefore, the Court finds that the ALJ did not violate 96-8p in this aspect.

### b. The ALJ's RFC finding was not conclusory and did not violate SSR 96-8p[4].

Next, the Plaintiff claims that the ALJ's RFC finding was conclusory and in violation of the mandates of SSR 96-8p. (Doc. 10, p. 31). When discussing an RFC in a decision, an ALJ's assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence." SSR 96-8p, 1996 WL 374184 at *7. The ALJ's RFC "must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis." *Id*. The RFC assessment must also consider and address medical opinions and "include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id*.

While the Plaintiff asserts that the ALJ's RFC assessment was conclusory, this is not reflected in the ALJ's opinion. In the ALJ's discussion of the Plaintiff's RFC, he specifically referenced her AFR, her daughter's assessment, and a number of medical records to support his finding. *See* (R. 19-24). The ALJ described the Plaintiff's ability to perform sustained work activities and noted that she could do activities like "simple, routine, repetitive tasks, but is unable to do so with detailed or complex tasks." (R. 20). Furthermore, the ALJ discussed why his RFC

---

[4] The Plaintiff's Brief initially stated that the ALJ was in violation of SSR 96-8a, but referred to SSR 96-8p throughout this section instead.

assessment conflicted with Dr. Wilson's report because he found that it contradicted the entire record. (R. 24). The ALJ did not simply make a conclusory analysis of the Plaintiff's RFC but supported his findings with substantial evidence. Records from the Plaintiff's doctor's visits consistently show that physically and mentally she was not experiencing the limitations alleged after the onset of disability. *See e.g.* (R. 414, 422, 435). Additionally, the Plaintiff's AFR indicated that despite the limitations she alleged, she does not have issues with personal care, can pay bills, count change, and maintain a savings account. (R. 236, 238).

The Plaintiff also claims that this case is similar to *Walker v. Bowen*, 826 F.2d 996 (11th Cir. 1987), in which the Court found the ALJ erred in finding that the Plaintiff had the RFC to engage in light work. The Plaintiff cites to certain issues the Court in *Walker* found to be faulty, such as the ALJ's failure to make specific reference to the claimant's treating physician and failure to consider all the claimant's impairments. (Doc. 10, p. 32-33) *Walker*, 826 F.2d at 1000-1001. The comparison of the Plaintiff's situation to these issues in *Walker* is misguided. First, the ALJ in *Walker* rejected the opinion of a physician, Dr. Gunther, who had treated the claimant for many years. *Id.* at 1000. In this case, the examining psychologist is not a treating physician because he had only assessed the Plaintiff once (R. 23). *See McSwain*, 814 F.2d at 619. Nevertheless, the Court in *Walker*

found that substantial evidence supported the reasoning behind Dr. Gunther's disability determination. As discussed in the above analysis, substantial evidence in the record does not support Dr. Wilson's conclusions. The Court in *Walker* also found that the ALJ did not consider all of the claimant's impairments in evaluating her RFC. In this case, the ALJ considered both the Plaintiff's severe and non-severe impairments in his determination of her RFC. *See* (R. 19-24). Accordingly, there is no basis for finding that ALJ's RFC determination is incorrect.

5. **The ALJ did not err in the application of the "Grids" and the questioning to the vocational expert was sufficient.**

The Plaintiff claims that the ALJ committed the following errors in the final step of the five step sequential evaluation. First, the Plaintiff argues that the ALJ improperly applied the Medical-Vocational Guidelines, or Grids, when determining if the Plaintiff could return to the workforce. (R. 26). The Plaintiff then argued that the testimony of the vocational expert (VE) was not substantial evidence because the hypothetical question asked did not "accurately state Claimant's pain level or her residual functional capacity." (Doc. 10, p. 28).

a. **The ALJ correctly applied Grid Rule 201.14.**

The Plaintiff argues that the ALJ erred when determining the applicable Grid Rule was 202.14. (R. 22). This rule finds that the Plaintiff would be able to perform light work and was not disabled. (R. 26). Instead, the Plaintiff insists that

the ALJ should have applied Grid Rule 201.14, which restricts the Plaintiff to sedentary work and would find that she was disabled. (R. 28).

At the fifth step of his analysis, the ALJ referenced Grid Rule 202.14 in connection with the Plaintiff's RFC, age, education, and work experience when deciding the Plaintiff's disability status. (R. 26). The Grids are not the sole arbiter of whether a claimant is found disabled or not disabled. They serve as a "frame of reference for considering the jobs or types of work precluded by other, nonexertional impairments in terms of numbers of jobs remaining for a particular individual." 20 C.F.R. Part 404, Subpt. P, app. 2 § 200.00(d). If a claimant has a nonexertional impairment, the ALJ may use the Grids but "also must introduce independent evidence, preferably through a vocational expert's testimony." *Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996).

As the Court noted in its discussion above, substantial evidence supports the ALJ's finding that the Plaintiff could perform light work. *See* Part (II)(C)(2)(b). Therefore, it follows that the ALJ did not err when applying Grid Rule 202.14 instead of 201.14. However, the ALJ did not solely rely on the Grids when determining the Plaintiff's disability at Step 5 of his analysis. He recognized that the Plaintiff had other limitations that required additional information, so he consulted the testimony of a VE. The Plaintiff claims the ALJ erred regarding the VE testimony as well. The Court will now address this argument.

**b. The testimony of the vocational expert was substantial evidence.**

The Plaintiff argues that the VE's testimony was not substantial evidence because the ALJ's hypothetical question to the expert was insufficient. When an ALJ asks a VE a hypothetical question, the question must include all of the claimant's severe impairments. *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985). If a question posed to the expert does not include all of the severe impairments, it will not be considered substantial evidence. *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). While a hypothetical question must reference a claimant's severe impairments, an "ALJ [is] not required to include findings in the hypothetical that the ALJ had property rejected as unsupported." *Crawford*, 363 F.3d at 1161 (11th Cir. 2004).

Here, the ALJ's hypothetical question to the VE included all the Plaintiff's physical limitations that were supported by the record. His question to the expert included limiting the Plaintiff to light work including "occasional pushing and pulling with lower extremities [and] no climbing of ladders, ropes, and scaffolds." (R. 49). The question also included the Plaintiff's mental limitations such as the ability to "[d]o simple routine repetitive tasks, but is unable to do so with detailed or complex instructions. Should have no more than occasional contact with the public." *Id*. As stated in the Court's analysis above, the record read in its entirety does not support the Plaintiff's allegations of intense pain or mental impairment

more than what was encompassed in the hypothetical question. Accordingly, the VE's testimony is substantial evidence in determining whether the Plaintiff had a disability.

### III.   CONCLUSION

For these reasons, and the Court being otherwise sufficiently advised, it is **ORDERED** that the final decision of the Commissioner is **AFFIRMED**. A final judgment will be entered separately.

**DONE** and **ORDERED** this November 25, 2019.

**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE